# STATE OF WEST VIRGINIA

# SUPREME COURT OF APPEALS

**Kevin Lester,**
**Claimant Below, Petitioner**

**vs.)    No. 21-0602** (BOR Appeal No. 2056171)
                        (Claim No. 2013031062)

**Apogee Coal Company,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner Kevin Lester, by counsel Stephen P. New and Amanda J. Taylor, appeals the decision of the West Virginia Workers' Compensation Board of Review ("Board of Review"). Apogee Coal Company, by counsel James W. Heslep, filed a timely response.

The issue on appeal is the amount of permanent partial disability in the claim. The claims administrator granted an additional 12% permanent partial disability award over and above a 25% permanent partial disability award that was previously granted, for a total award of 37%. On December 16, 2020, the Workers' Compensation Office of Judges ("Office of Judges") reversed the claims administrator's decision and granted an additional award of 6% permanent partial disability to the 37% granted by the claims administrator, for a total of 43% permanent partial disability. This appeal arises from the Board of Review's Order dated July 1, 2021, in which the Board reversed and vacated the Order of the Office of Judges. The Board of Review reinstated the claims administrator's Order dated October 27, 2017.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

The standard of review applicable to this Court's consideration of workers' compensation appeals has been set out under W. Va. Code § 23-5-15, in relevant part, as follows:

1

(c) In reviewing a decision of the Board of Review, the Supreme Court of Appeals shall consider the record provided by the board and give deference to the board's findings, reasoning, and conclusions . . . .

. . . .

(e) If the decision of the board effectively represents a reversal of a prior ruling of either the commission or the Office of Judges that was entered on the same issue in the same claim, the decision of the board may be reversed or modified by the Supreme Court of Appeals only if the decision is in clear violation of constitutional or statutory provisions, is clearly the result of erroneous conclusions of law, or is so clearly wrong based upon the evidentiary record that even when all inferences are resolved in favor of the board's findings, reasoning, and conclusions, there is insufficient support to sustain the decision. The court may not conduct a de novo reweighing of the evidentiary record. . . .

*See Hammons v. W. Va. Off. of Ins. Comm'r,* 235 W. Va. 577, 582-83, 775 S.E.2d 458, 463-64 (2015). As we previously recognized in *Justice v. West Virginia Office Insurance Commission*, 230 W. Va. 80, 83, 736 S.E.2d 80, 83 (2012), we apply a de novo standard of review to questions of law arising in the context of decisions issued by the Board. *See also Davies v. W. Va. Off. of Ins. Comm'r*, 227 W. Va. 330, 334, 708 S.E.2d 524, 528 (2011).

Mr. Lester sustained compensable injuries to his head, neck, and back in a bulldozer accident on May 15, 2013. He was treated at Cabell Huntington Hospital on May 16, 2013, where he was diagnosed with an injury to the sciatic nerve, concussion, brief coma, and cervical spondylosis. An MRI of Mr. Lester's cervical spine and lumbar spine was conducted and revealed central canal stenosis with multilevel neural foraminal compromise and a L3-L4 disc bulge. An Employees' and Physicians' Report of Occupational Injury was completed on May 21, 2013, reflecting injuries to the head, shoulders, neck, back, legs, and hips, as well as numbness in the feet. The physician's portion of the form indicated diagnoses of injury to the sciatic nerve and an unspecified head injury. On May 29, 2013, the claims administrator held the claim compensable for an injury to the back with lower extremity paresthesia/legs and a closed head injury.

On September 11, 2013, Mr. Lester was evaluated by Saghir Mir, M.D., who conducted an Independent Medical Evaluation and determined that Mr. Lester had not achieved maximum medical improvement with regards to the compensable injury. A second Independent Medical Evaluation was performed by Joseph E. Grady II, on April 20, 2015. Dr. Grady reviewed Mr. Lester's medical records and conducted a physical examination before finding that he had reached maximum medical improvement with 25% whole person impairment. Based upon Dr. Grady's recommendation, the claims administrator granted Mr. Lester a 25% permanent partial disability award on June 18, 2015. Mr. Lester protested the claims administrator's decision.[1]

---

[1]On November 1, 2016, the Office of Judges affirmed the claims administrator's award of 25% permanent partial disability. Mr. Lester appealed the decision to the Board of Review, which, by Order dated May 11, 2017, reversed and vacated the Order of the Office of Judges. The Board

Mr. Lester underwent a psychiatric Independent Medical Evaluation with Bobby Miller, M.D., on January 28, 2016. Dr. Miller conducted a review of the medical records and conducted an examination, which also included psychological testing. Dr. Miller opined that Mr. Lester was disabled as a result of psychological conditions on a permanent basis. Dr. Miller later supplemented his report to find an 11% whole person impairment rating of Mr. Lester's psychiatric work-related conditions, PTSD, and dysthymic disorder.

Mr. Lester underwent an Independent Medical Evaluation by Robert Walker, M.D., on January 29, 2016. In his report dated February 19, 2016, Dr. Walker stated that he reviewed clinical records and performed a physical examination before concluding that Mr. Lester had reached his maximum degree of medical improvement with substantial whole person impairment attributable to the compensable injury of May 15, 2013. Dr. Walker agreed with Dr. Grady that Mr. Lester had 25% whole person impairment for his cervical spine. Additionally, Dr. Walker estimated 5% impairment for the thoracic spine; 7% impairment for the lumbar spine; 19% impairment for the direct spine injury; 14% impairment for the closed head injury; and 5% impairment for the left peroneal nerve injury. Upon combining these impairments, Dr. Walker opined that Mr. Lester experienced 56% whole person impairment attributable to his compensable injuries. By Addendum Report dated July 7, 2016, Dr. Miller opined that Dr. Walker's permanent partial disability rating of 14% for the closed head injury was proper.

Mr. Lester was referred for a second Independent Medical Evaluation with Dr. Mir. In his report dated August 2, 2017, Dr. Mir diagnosed Mr. Lester as suffering from post-surgical decompression and fusion of the cervical spine from C5 to C7; resolved clinical signs of myelopathy in the upper and lower extremities with no evidence of radiculopathy; lumbosacral strain; residual headaches from head injury with questionable seizure disorder; healed nasal bone with improvement of symptoms of sinusitis following surgery; and healed compression fracture of the thoracic spine involving the T6 and T7 vertebrae following kyphoplasty. Dr. Mir assessed Mr. Lester with 25% impairment for his cervical fusion; 7% for lumbar strain/sprain; 6% for the T6-7 fracture; and 5% for the head injury. In total, Dr. Mir found 37% whole person impairment. By Order of the claims administrator dated October 27, 2017, Mr. Lester was granted an additional 12% permanent partial disability award beyond the 25% award previously granted to him. Mr. Lester timely protested the claims administrator's decision.

On October 1, 2018, Dr. Walker conducted a second Independent Medical Evaluation and recommended 58% whole person impairment. The impairment consisted of 25% for the cervical spine; 5% for the thoracic spine; and 7% for the lumbar spine. Dr. Walker further assessed 14% whole person impairment for Mr. Lester's central nervous system, referenced as a closed head injury. Finally, Dr. Walker assessed 19% whole person impairment for gait abnormalities and 10% for a left peroneal nerve injury to the lower extremity.

_____

of Review remanded the claim to the claims administrator to determine if injuries to the thoracic spine and lumbar spine were included as compensable components of the claim and to refer Mr. Lester for another permanent partial disability rating.

The Office of Judges entered a Final Decision on July 13, 2020, finding the diagnoses of sprain of lumbar spine, sprain of pelvis, neck strain, thoracic strain, and closed head injury as compensable diagnoses in the claim. Following the inclusion of the additional diagnoses, the employer introduced an Independent Medical Evaluation report from Syam Stoll, M.D. In his August 20, 2020, report, Dr. Stoll indicated that he performed a physical examination of Mr. Lester and reviewed his clinical history. After concluding that he had reached maximum medical improvement, Dr. Stoll recommended 26% whole person impairment for the cervical sprain injury; 26% whole person impairment for the cervical spine, of which 10% was subtracted for preexisting conditions; 8% for the thoracic spine; and 5% for the lumbar spine. Dr. Stoll recommended no impairment for Mr. Lester's bilateral lower extremity paresthesias. Although some mild abnormalities of the left peroneal nerve were observed, Dr. Stoll was of the opinion that such could not entirely account for Mr. Lester's symptoms involving the peroneal and tibial nerve.

In a Final Decision dated December 16, 2020, the Office of Judges reversed the October 27, 2017, Order of the claims administrator, and Mr. Lester was granted an additional 6% permanent partial disability for a total of 43% impairment. The Office of Judges found that Mr. Lester sustained 25% whole person impairment to his cervical spine, 5% impairment to his thoracic spine, 7% impairment to his lumbar spine, and 14% impairment for his closed head injury. When the figures are combined pursuant to the American Medical Association's *Guides to the Evaluation of Permanent Impairment*, (4th ed. 1993), Mr. Lester's total impairment is 43%. The Office of Judges distinguished between the evaluators based upon their assessment of Mr. Lester's closed head injury and gait derangement. Dr. Walker's opinion was found to be the most credible with respect to Mr. Lester's closed head injury. The Office of Judges reasoned that Dr. Walker's opinion was supported by Dr. Miller's evaluation, and it was noted that Dr. Stoll made no recommendation for any such impairment. However, the Office of Judges rejected Dr. Walker's finding and impairment rating with respect to gait impairment and his left peroneal nerve injury because the recommended impairment was unsupported and not corroborated by any other medical evidence. The Office of Judges accepted Dr. Walker's report, with the deletion of his recommendation for gait derangement, and using the Combined Values Chart, under the AMA *Guides,* found 43% whole person impairment for Mr. Lester.

In an Order dated July 1, 2021, the Board of Review reversed and vacated the decision of the Office of Judges because the Order's analysis and conclusions were affected by error of law and clearly wrong in view of the reliable, probative, and substantial evidence of the whole record. The Board of Review determined that the Office of Judges arrived at the conclusion that Mr. Lester has 43% impairment by utilizing select findings from Dr. Walker's report, which excluded Dr. Walker's recommendation for gait derangement. The Board of Review noted that this Court has questioned the utilization of select findings from medical reports by stating that such reports would not form a reliable basis for assessing the amount of a claimant's whole person impairment for a permanent partial disability award. The Board of Review cited *Repass v. Workers' Compensation Division*, 212 W. Va. 86, 569 S.E.2d 162 (2002), which stated on page 171 that "the Commissioner is to make permanent partial disability awards solely on the basis of the doctor's impairment evaluation."

The Board of Review concluded that Dr. Walker's recommendation of impairment for gait derangement is unsupported by any other medical evidence. It was also determined that Dr. Stoll's report is unsupported by any other evidence, as he is the only evaluator to apportion for preexisting conditions and found 0% impairment for the closed head injury. The Board found Dr. Mir's 37% impairment recommendation to be reliable. Because Mr. Lester was previously granted a 25% permanent partial disability award, it was found that the claims administrator's Order dated October 27, 2017, which granted an additional 12% for a total of 37% permanent partial disability, was proper. Thus, the claims administrator's Order was reinstated.

After review, we agree with the findings and conclusions of the Board of Review. The Board of Review correctly reversed the decision of the Office of Judges that was not in accordance with prior decisions from this Court regarding awards for permanent partial disability. The evidence of record indicates that the claims administrator fully compensated Mr. Lester for permanent partial disability related to his compensable injury when it granted him 12% additional permanent partial disability for a total of 37% under this claim.

Affirmed.

**ISSUED: May 2, 2023**

**CONCURRED IN BY:**

Chief Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice C. Haley Bunn

**DISSENTING:**

Justice William R. Wooton

WOOTON, J., dissenting:

I dissent to the majority's conclusory affirmance of the Board of Review in this case. I would have placed the matter on the Rule 20 argument docket for fuller analysis and to address an issue requiring clarification by way of syllabus point. Petitioner sustained various permanent partial injuries, including a closed head injury, requiring multiple individual impairment assessments. The Office of Judges ("OOJ") reversed the claims administrator's 37% permanent partial disability ("PPD") award, finding that it improperly failed to make an adequate award for petitioner's closed head injury. The OOJ found that Dr. Walker's evaluation was overall the most credible and included a closed head injury impairment rating of 14% that had been expressly endorsed by the evaluating psychiatric examiner. However, the OOJ also recognized that Dr. Walker's evaluation also incorrectly included two impairment ratings that were not otherwise corroborated and excised them from the total PPD award, for a net total award of 43%. The Board of Review ("BOR") declared this erroneous and reinstated the 37% PPD, concluding that our

5

caselaw dictates that because there were certain discrete impairment awards that should not have been included in Dr. Walker's assessment, his opinion must be disregarded *in toto*. Instead, the BOR adopted Dr. Mir's assessment in its entirety, ostensibly because it was not similarly afflicted by any improper inclusion of certain non-compensable impairments. However, Dr. Mir's evaluation suffered from an equal if not greater defect: he assessed only a 5% closed head injury impairment rating despite both Dr. Walker and Dr. Miller, a psychiatrist, recommending 14%. The majority summarily affirms the Board of Review's conclusion that the Office of Judges' use of piecemeal portions of Dr. Walker's report was "not in accordance" with prior decisions of this Court and allows the less reliable 5% closed head injury impairment rating to stand.

The majority's memorandum decision ostensibly stands for the proposition that an otherwise credible evaluation that contains discrete errors cannot be salvaged and must yield to an overall less well-substantiated evaluation, even if includes impairment ratings that fail to fully compensate an employee. However, as demonstrated by the scant two pieces of authority the Board of Review cites for this proposition, this Court has never held by syllabus point that PPD awards must be based on one wholesale report by a single physician. The case cited for this proposition— *Repass v. Workers' Comp. Div.*, 212 W. Va. 86, 95, 569 S.E.2d 162, 171 (2002)— merely contains a quote from a per curiam opinion that states "the Commissioner is to make permanent partial disability awards solely on the basis of the doctor's impairment evaluation." Viewed in context, the *Repass* Court was merely expressing that, based on recent changes to the statute, the degree of medical impairment is now the same as the PPD rating and must be substantiated by a physician's opinion. This statement does not purport to express that the tribunals may not accept otherwise credible and severable portions of a physician's impairment evaluation, nor does it purport to be an authoritative point of law. The other case cited by the BOR—*Baria v. Capitol Beverage Co.*, No. 15-0056, 2015 WL 5883444 (W. Va. Oct. 7, 2015) (memorandum decision)—is a memorandum decision which, although it does at least attempt to express this position, questionably relies exclusively on *Repass*.

The problem with this approach, in practice, is well demonstrated by the instant case. Because the Board of Review felt constrained to accept one singular impairment evaluation rather than being able to simply eliminate the non-compensable impairment ratings contained in Dr. Walker's report, petitioner was shortchanged a portion of his closed head injury PPD. And while a majority of this Court may ultimately conclude that a PPD award must be based on one singular physician's wholesale impairment evaluation, it simply has not yet issued a syllabus point to that effect, and the caselaw cited in support does not clearly stand for that proposition.

For these reasons, I would have placed this matter on the Rule 20 argument docket for examination of that issue and for the Court to issue clear guidance in that regard. Accordingly, I respectfully dissent.